Richard E. COFFIN

v.

John A. TRICOLI, Jr., et al.

Civ. A. No. 77–0318–R.

United States District Court,
E. D. Virginia,
Richmond Division.

July 28, 1977.

8

Stuart W. Settle, Coates, Comess, Settle, Moore & Taylor, Richmond, Va., for plaintiff.

W. H. C. Venable, Cohen, Abeloff & Staples, P. C., Richmond, Va., for defendants.

## MEMORANDUM

WARRINER, District Judge.

This matter is before the Court on defendants' motions of 5 July 1977 pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(6) to dismiss the above-styled action for lack of jurisdiction and for failure to state a claim upon which relief can be granted. As plaintiff has filed a responsive brief to these motions and defendants have filed their rebuttal brief, the motions to dismiss are ripe.

A summary of the facts relevant to this motion as alleged in plaintiff's complaint is substantially as follows: Defendant Mr. Tricoli, president of defendant Polishing Machine Systems, Inc., (hereinafter PMS) a Virginia corporation, approached plaintiff in November 1975. Plaintiff at that time was operating a service station in New York State. Defendant induced plaintiff to become an "area distributor" of PMS products. The fee charged for the "distributorship" was $3,500.

A few months later defendant Mr. Tricoli, defendant Mrs. Tricoli, and defendant Mr. Daniels, attorney for defendant PMS, met with plaintiff for the purpose of inducing plaintiff to purchase for $30,000 a 50% interest in the unregistered common stock of PMS. Shortly afterward plaintiff entered into an agreement with defendant Mr. Tricoli setting forth the terms of the $30,000 stock purchase, one of which was that plaintiff, as executive vice-president, was to share on an equal basis in the overall operation of PMS. Some several months after gaining access to the books and accounts of PMS, plaintiff determined that the representations made to him had been materially false and misleading and, in fact, PMS was in a position of insolvency. Plaintiff is now suing for both compensatory and punitive damages.

It is defendants' position that the Court lacks jurisdiction in this matter as the Securities Act of 1933 and the Securities and Exchange Act of 1934 do not grant jurisdiction to federal courts unless there has been a fraudulent sale of a security as defined by those Acts. Defendants argue that the transaction described by the plaintiff does not fall within the definition of a security and, hence, plaintiff's complaint fails both for lack of jurisdiction and for failure to state a claim upon which relief can be granted.

In support of their position, defendants cite the recent case of *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975) in which the Supreme Court held that the mere sale of shares called "stock" is not conclusively a security transaction within the coverage of the Securities Acts simply because the statutory definition of a security includes the words "any . . . stock." Instead, in searching for the meaning and scope of the word "security" as used in the Securities Acts, courts should disregard form and look to the substance of the transaction. 421 U.S. at 849, 95 S.Ct. 2051. The High Court went on to state that a security involved "the presence of an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts *of others*." 421 U.S. at 853, 95 S.Ct. at 2060 (emphasis added).

Plaintiff argues that since what defendants sold to him was clearly, unequivocally,

completely, and without modification or limitation, shares of stock then the Act must apply without regard to any other consideration. He points out that the decision in *Forman* is inapposite since, though there the instrument was called "stock" the reality was that it was not stock since it lacked most or all the significant attributes of stock. By contrast, the allegations of the complaint and the undeniable fact is that in this case the investment by plaintiff is represented by shares of stock to which are attached all or substantially all the attributes generally associated with that term. The Court must determine whether plaintiffs' straightforward and direct reading of the statute is consonant with the teaching of the decided cases.

Repeatedly, the law is laid down in this area that courts are to look to substance and not to form. The substance of the transaction alleged in the complaint is that plaintiffs bought a half-interest in the business along with the right to participate 50–50 in its management. Further, they proceeded to exercise that ownership and management. The fact that the transfer of the ownership interest and the management right took the form of the sale of stock does not alter the substance. Nor does it alter the fact that though the form of the sale was through stock the investment was not made for the purpose of seeking a profit or return solely through the work of others. The offer of the sale of the stock was contained in language to the effect that defendant Mr. Tricoli does, "hereby offer unto Richard E. Coffin a ½ (one-half) interest of Polishing Machine Systems, Inc. That is a full 50–50 agreement. The purchase price for said interest, the sum of $30,000."

The contract goes on to say that, "[u]pon acceptance of this agreement, Mr. Coffin is to share on an equal basis in the over-all operation of Polishing Machine Systems, Inc. and all other directly related and wholly owned subsidiaries."

Paragraph six of the agreement provided "Tricoli and Coffin will at all times use their best efforts and full time in the day to day overall management of the company, following through with agreed company plans, policy and standard operation."

Paragraph seven provided for plaintiffs and Mrs. Coffin to assume positions as officers of the corporation and, finally, in paragraph ten the question of the issue of stock is dealt with. It reads as follows, "Upon acceptance of this agreement, the shares representing this 50–50 agreement to be immediately issued."

The *substance* of the investment made by plaintiff is as set forth in the agreement from which the excerpts above are taken. Since the business was a corporation, the *form* of the purchase of the one-half interest and the assumption of one-half management rights was through the sale of stock. The law must look to the substance and not to the form. The question, then, is where the substance of a business transaction is the sale of an interest in a corporation with a concomitant right and obligation to participate in the management, are the certificates of stock issued to represent the transfer of that ownership interest "stock" within the meaning of Section 2(1) of the Securities Act of 1933?

That the name given to the investment instrument is not to be given a wooden meaning is made clear by *Securities & Exch. Com. v. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). *Howey* discusses and defines an "investment contract" within the meaning of Section 2(1) of the Securities Act of 1933. On pages 297–299, 66 S.Ct. on page 1102, in discussing the meaning, the Court points out that at common law "an investment contract . . . came to mean a contract or scheme for 'the placing of capital or laying out of money in a way intended to secure income or profit from its employment.'" Omitting citations, the Court went on to say:

This definition was uniformly applied by State courts to a *variety of situations* where individuals were led to invest money in a common enterprise with the expectation that they would earn a profit solely through the efforts of the promoter or of someone other than themselves.

[328 U.S. at 298, 66 S.Ct. at 1102–03 (emphasis added)].

The Court defined an investment contract for purposes of the Securities Act as meaning:

[A] contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, *it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise.* [328 U.S. at 298, 299, 66 S.Ct. at 1103.]

The Supreme Court observed that this definition:

[P]ermits the fulfillment of the statutory purpose of compelling full and fair disclosure relative to the issuance of '*the many types of instruments* that in our commercial world fall within the ordinary concept of a security.' . . . It embodies a flexible rather than a static principle, one that is capable of adaptation to meet the *countless and variable schemes* devised by those who seek the use of the money others on the promise of profits. [328 U.S. at 299, 66 S.Ct. at 1103 (emphasis added)].

Finally, the Supreme Court observes that:

[T]he test is whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others. If that test be satisfied, it is immaterial whether the enterprise is speculative or non-speculative or whether there is a sale of property with or without intrinsic value. [328 U.S. at 301, 66 S.Ct. at 1104].

■ Though the Supreme Court in *Howey* consistently used the term "investment contract" it is clear that the definition used is applicable to "a variety of situations," "whether . . . evidenced by formal certificates or by nominal interest," for "many types of instruments," effectuating "countless and variable schemes." Thus, this Court is constrained to apply the definition to all securities, all devices and schemes, all forms or manners in which one may be induced to invest money in the hope of deriving a profit from the work of others. Even though the security be clearly, unequivocally and without quibble a share of stock, nevertheless, if it does not represent an interest in an enterprise from which the investor seeks to derive a profit *solely from the work of others* then it is not "stock" for purposes of the Act no matter what its efficacy as stock for other purposes may be.

The premise that in *Howey* the Supreme Court was not defining the narrow concept of an "investment contract" but was instead trying to define the "countless and variable schemes devised by those who seek the use of money of others on the promise of profits" is made clear by its further discussion in *Forman, supra.* The Court held in *Forman* that the mere naming of a piece of paper as "stock" did not make it stock for the purposes of the Act. 421 U.S. at 848, 95 S.Ct. 2051. This distinction was emphasized when the Court said that previous decisions had:

[M]ade clear that [the Court] was not establishing an inflexible rule barring inquiry into the economic realities underlying a transaction. On the contrary, the Court intended only to make the rather obvious point that, in contrast to the instrument before it which was not included within the explicit statutory terms, most instruments bearing these traditional titles are likely to be covered by the statutes.

In holding that the name given to an instrument is not dispositive, we do not suggest that the name is wholly irrelevant to the decision whether it is a security. There may be occasions when the use of a traditional name such as "stocks" or "bonds" will lead a purchaser justifiably to assume that the federal securities laws apply. This would clearly be the case when the underlying transaction embodies some of the significant characteristics typically associated with the named instrument. 421 U.S. at 850–851, 95 S.Ct. at 2059 60.

In further support of the view that a device, no matter what its name, must meet the definition of "an investment of money in a common enterprise with profits to come solely from the efforts of others," the Court in *Forman* said "[w]e perceive no distinction, for present purposes, between an 'investment contract' and an 'instrument commonly known as a "security".' " 421 U.S. at 852, 95 S.Ct. at 2060. The Court goes on to say:

> This test, in shorthand form, embodies the essential attributes that run through all of the Court's decisions defining *a security*. The touchstone is the presence of *an investment* in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others. . . . In such cases the investor is 'attracted solely by the prospects of a return' on his investment. . . . By contrast, when a purchaser is motivated by a desire to use or consume the item purchased—'to occupy the land or to develop it themselves,' as the *Howey* court put it, *ibid.*—the securities laws do not apply. [421 U.S. at 852–853, 96 S.Ct. at 2060–61]. (emphasis added).

■ By that definition and that discussion it is clear that the investment made by the plaintiff in this case does not come under the Act. He was not seeking a profit or return solely from the "entrepreneurial or managerial efforts of others." Instead, he bought himself a job with the company and assumed an official position as executive vice-president with a 50–50 managerial right. To use the phrase of the Supreme Court in *Forman*, "the securities laws do not apply."

Plaintiff points out that even though *Howey* stressed the language "solely the work of others," the Ninth Circuit Court of Appeals in *S.E.C. v. Glen W. Turner, Inc.*, 474 F.2d 476 (9th Cir. 1973) refused to bar the plaintiffs from their Securities Act claim merely because they had to exert substantial *effort* of their own to obtain a

profit. The Court held that the word "solely" should not be applied mechanistically so that any effort or work by the investor, no matter how slight, would remove the investment from the coverage of the Act. The Ninth Circuit adopted what it considered a more realistic test: "[W]hether the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise." 474 F.2d at 482.

This test may not be as easy to apply as it is to formulate. In most business enterprises the managerial efforts of several persons, as a practical matter, "affect the failure or success of the enterprise." An investor who also becomes a part of management should not be able to claim the protection of the Act merely because others in the common enterprise exert essential managerial efforts which affect the failure or success of the enterprise. If the investor-manager participates in those managerial efforts then even the *Turner* gloss on the word "solely" would not bring the investment within the coverage of the Act.

Indeed, the facts in *Turner* show that the investor there had no management duties at all. Each investor was a promoter of his own pyramid empire but the money he invested was in a corporation controlled wholly by others. A Chevrolet dealer who buys stock in General Motors would not be precluded from protection of the Act merely because his efforts (indeed managerial efforts) affect the failure or success of General Motors.[1] But one who purchases a one-half interest in a corporation, who devotes his full time and effort to its corporate affairs, who assumes and accepts the position of executive vice-president and who serves in that capacity for a substantial period of time cannot be said to be depending "solely" on the efforts of others to realize on his investment.

In the absence of federal question jurisdiction under the securities laws the pendent jurisdiction over the remaining counts

---

1. The word "affect" has no life or death connotations. Every sale of a Chevrolet (or failure to sell) affects the success (or failure) of General Motors.

of the complaint falls. It is appropriate, however, to paraphrase the Supreme Court in part three of its *Forman* decision:

> In holding that there is no federal jurisdiction, we do not address the merits of [plaintiff's] allegations of fraud. Nor do we indicate any view as to whether the type of claims here involved should be protected by federal regulation. We decide only that the type of transaction before us, in which the purchaser [assumed a substantial and significant managerial position in the enterprise], is not within the scope of the federal securities laws. [421 U.S. at 859–860, 95 S.Ct. at 2064].

Accordingly, the complaint will be dismissed.

An appropriate order shall issue.